(Lewis's Estate.)

---

[PHILADELPHIA, JANUARY 31, 1838.]

## LEWIS'S ESTATE.

### APPEAL.

1. It is a general rule, that when a will contains two clauses, totally inconsistent and incapable of being reconciled, the latter shall have a preference.
2. A testator directed that his wife should have, during life, the annual interest or income arising from the rents and sales of one equal third part of his whole estate, lands and tenements, whether the same consisted of legal or equitable titles, after all necessary expenses, &c., in recovering the same and completing the titles thereof, &c. first deducted. In a subsequent clause he directed that his personal estate, after certain deductions, "and also deducting thereout so much as may be necessary for discharging my just debts, and completing my titles to my Kentucky lands," should be divided among certain persons: *Held*, that the cost and charges of completing the titles to the Kentucky lands were to be paid out of the personal estate.

THIS was an appeal from a decree of the Orphans' Court for the County of Philadelphia, on the settlement of the account of William Rawle, Esquire, and others, executors of the last will and testament of William Lewis, Esquire, counsellor at law, deceased.

The only question in the Court below, and in this Court, arose *upon the construction of the will of Mr. Lewis, the material parts of which were as follows: [*163]

"1. Of this my said will, I appoint my dear wife Frances Lewis, my only son Josiah Lewis, and my valuable friend William Rawle, Esquire, counsellor at law, and the survivors and survivor of them, executors and executor.

2. I authorise and empower my said executors, and the survivors and survivor of them, to take possession of and assume on themselves the exclusive care, superintendence and management of all my real estate, houses, messuages, lands, tenements and here-

ditaments, wherever the same are or may be situate, and whether my right and interest therein be legal or equitable only, and the same to lease and demise, or otherwise to manage or dispose of in the best way that they can for the benefit of my estate, until the same shall be sold and conveyed as hereinafter directed; and that there may be no defect of authority in my executors, they, and the survivors and survivor of them are fully empowered to do all such matters and things as may be necessary to acquire legal titles to all such lands and tenements as are held in trust for me, or as I have only an equitable right to.

3. I give full power and authority to my said executors, and the survivors and survivor of them, at such time and times, and in such manner as they may think proper, to sell and convey the whole and every part of my said real estate, lands and tenements, to which I am entitled as aforesaid, by such parts and parcels, and on such terms and conditions as they may reasonably think will be for the benefit of my estate, and those interested therein.

4. It is my mind and will that my said dear wife shall, during her natural life, have and enjoy the annual interest or income arising from the rents and sales, of one equal third part of all my whole estate, lands and tenements, whether the same consists of legal or equitable titles, *after all necessary expenses, costs, charges and advances in recovering the same and completing the titles thereof,* as well as of the selling and disposing of the same, *shall first be deducted* out of the whole amount of such rents and sales, and I empower my said executors to make such arrangements thereof, as shall effectually secure the same to her; and my mind and will further is, that all the moneys and emoluments arising as aforesaid, from all such rents and sales, subject to the right and interest therein hereby given to my said wife, shall go and be enjoyed as follows: that is to say, I give and bequeath to my said son Josiah forever, one equal third part thereof; and the remaining two-third parts thereof, I will and direct to be divided into three equal parts one of which I give and bequeath to my only daughter, Margaret Agard, for her sole, separate and exclusive use forever, but trusting that she will thereout afford such assistance to her daughter Martha, [*164] *for her sole, separate and exclusive use and benefit, as she shall, in her discretion, think prudent and proper. To my grand-daughter, Louisa Agard, I give and bequeath one other of the last-mentioned three equal parts for her sole, separate and exclusive use forever; and to my grandson Lewis H. Conover, I give and bequeath forever the other of the said three equal third parts; and to prevent any doubts it is hereby

(Lewis's Estate.)

expressly declared, that what is by this my will given to my said children and grand-children respectively, is over and beyond what any of them have heretofore had from me, or what I may have before done for them, and for no part of which any of them are to account.

11. I request that whatever moneys are due to me, may be collected with all convenient dispatch, and that the same, with the amount of all my personal estate, goods, chattels and effects, not herein otherwise disposed of, may, after deducting thereout what may be necessary for the house-use of my wife, my daughter Margaret, and my grand-daughter Louisa, until a reasonable time shall be allowed for their convenient accommodations, and also *deducting thereout* so much as may be necessary for discharging my just debts, and *completing my titles to my Kentucky lands* be *divided* between my said son Josiah, my daughter Margaret, my grand-daughter Louisa, and my grandson, Lewis H. Conover, in the like shares and proportions, and in like manner as is herein-before directed as to the income and amount of the proceeds and sales of my real estate. My dear wife is well deserving of being included in this bequest and division of the remainder of my personal estate, but I have not done it, as by certain marriage articles between us, she reserved to herself all her own property; which, with the provisions that I have herein made for her, will place her in as easy a situation as I can afford, in justice to the other parts of my family, after the heavy losses that I have sustained; and further, because she is not desirous of it. As this will, and all the corrections, are in my own hand-writing, I do not think it necessary to notice them, except the interlineation in the first page, under No. 4, of the words " one equal third part of," which was occasioned by an oversight in the drawing, and seems to be so important as to require an explanation."

A codicil to this will made on the 7th of August, 1819, was as follows :

" I William Lewis, of Philadelphia county, in the state of Pennsylvania, do hereby declare the following to be a codicil to my last will and testament, dated the fifth instant. Whereas I am seised of and entitled to sundry lands, tenements and hereditaments in the State of Kentucky, which by my said will I have empowered my executors to dispose of; and it may be deemed necessary for that *purpose to have probate of my said will made according to the laws of Kentucky ; and by the laws of [*165] that State, the executors of a will are obliged to give security for the due administration of the decedent's estate, with power, however, to the testator, in the cases mentioned in a certain act of assembly, to direct otherwise. Now I do hereby direct that

(Lewis's Estate.)

the executors in my said will named, shall not be obliged to give security for the administration of my estate, or the performance of my will. And further I order, direct and declare, that my said executors shall not be answerable one for the other, in any thing relative to the powers, trusts and duties on them devolving, either by inference of law, or by the trusts expressly created in my said will."

In the Orphans' Court, the accounts were referred to an auditor, who reported as follows on the subject in controversy.

" A dispute has existed between the widow and the other legatees, ever since the death of Mr. Lewis, as to the proper construction of the fourth and eleventh clauses of the will.

In the fourth clause the testator declares as follows :—" It is my mind and will that my said dear wife shall, during her natural life, have and enjoy the annual interest or income arising from the rents and sales of one equal third part of all my whole estate, lands and tenements, whether the same consists of legal or equitable titles, after all necessary expenses, costs, charges, and advances in recovering the same, and completing the titles thereof, as well as of the selling and disposing of the same, shall first be deducted out of the whole amount of such rents and sales."

That portion of the eleventh clause which bears upon the question in dispute is as follows ;—" I request, that, whatever moneys are due to me, may be collected with all convenient dispatch, and that the same, with the amount of all my personal estate, goods, chattels and effects not herein otherwise disposed of, may, after deducting thereout what may be necessary for the house-use of my wife, my daughter Margaret, and my grand-daughter Louisa, until a reasonable time shall be allowed for their convenient accommodation, and *also deducting thereout* so much as may be necessary for discharging my just debts, and completing my titles to my Kentucky lands, be divided," &c.

The only part of the testator's real estate which has yet been sold, is the country-seat called " Somerville," situated in Penn Township, in the county of Philadelphia. The net proceeds of the sale were $10,431 62. The particular charges and expenses on that property amounted to $303 41. The expenses incurred on account of the Kentucky lands, up to the time of filing the first account, were $980 05, making a total of $1283 46.

[*166]    *The apparent contradiction between the two clauses, as to the fund out of which the expenses of completing the titles to the Kentucky lands should be paid, has given rise to the dispute. The widow always contended, and so Mr. *Williams* argued, that by the eleventh clause of the will, it ought to be paid out of the personal estate; and, consequently, that she was entitled to interest upon one third of the proceeds of the Somer-

ville estate, after deducting therefrom $303 41, to wit, upon the sum of $3376 07.

Mr. *Rawle*, Junior, who represented all the legatees of Mr. Lewis, except Green, argued that the widow was only entitled to interest upon one-third of the proceeds of the Somerville estate, after deducting therefrom $1283 46, being the costs, charges and expenses incurred on account of all the testator's real estate, as above-mentioned.    This would leave the widow entitled to interest on the sum of $3049 38.

Your auditor, after much consideration of the matter, has adopted the latter construction; not, however, without some hesitation.    The ground of his opinion is shortly this—that the construction contended for by Mr. Rawle is the only one by which both clauses of the will may be made to stand.    The construction contended for by Mr. Williams admits the two clauses to be irreconcilable, and gives effect to the eleventh, at the expense of the fourth.    By supposing that the testator meant, that the expense of completing the titles to his Kentucky lands should be paid for in the first instance, out of his personal estate, and that the fund should be reimbursed such advances, upon the sale of the real estate, the two clauses may be reconciled, and full and proper effect given to each."

Exceptions were filed to the auditor's report as follows:

"1. For that the auditor has reported that the expenses incident to the sale, management and completion of the titles of said real estate, should not be paid from the personal estate.

2. For that the sum, the interest of which was allowed to the widow by the will of the testator, has been diminished by deductions incorrectly allowed by the auditor.

3. For that the amount awarded to the estate of the widow, under the will of the testator, was less than she is entitled to.

4. For that the construction given to the fourth and eleventh clauses of the said will of the testator, is incorrect and injurious to the interests of the estate of the said widow, by subjecting her income to sundry deductions not contemplated by the will of the testator.

5. For that the amount allowed to the widow's estate is less than that to which her legatee claiming the said estate is entitled."

*The Orphans' Court, however, confirmed the report of the auditor; and an appeal was taken to this Court. [*167] The errors assigned were the same as the exceptions to the auditor's report in the Court below.

Mr. *Williams*, for the appellant, contended that under the 11th clause of the will of Mr. Lewis, the expenses of the Kentucky

(Lewis's Estate.)

lands were to be paid out of the personal estate, and not out of the proceeds of the sale of the real estate under thê 4th clause. Where there are two clauses in a will containing contradictory directions, the latter, as being the last will of the testator, shall control the former. 2 Roper on Leg. 328; Stiles, 275.. It is the rule also that a particular clause will overrule a general devise inconsistent with it. It will be held, that the testator has not used the general words in their general signification. *Robinson* v. *Martin*, (2 Yeates, 525); *Roe* v. *Reade*, (8 Term Rep. 122); *Strong* v. *Teatt*, (2 Burr. 912.) These rules seem to govern the case; and the general principle with respect to the application of the personal estate to the payment of debts, and the relief of the real estate accords with them, and supports the view taken by us.

Mr. *Rawle, contra.*—The argument on the other side goes on the supposition that the clauses in the will are inconsistent; which is hardly to be supposed in the case of a will drawn by a professional person of so much eminence as Mr. Lewis. The Court will in all cases endeavour to reconcile apparent inconsistencies. 2 Roper on Leg. 321. The construction on the other side makes a part of the 4th clause inoperative. The real estate here was the primary fund, and the personal estate ancillary. The testator here did not intend that the personal estate should bear the expenses of the Kentucky lands, because he did not know how long it would be before those titles were settled; and it cannot be supposed that he meant that the personal estate should be tied up indefinitely. The provision here was merely an authority to borrow from the personal estate, to be repaid from the proceeds of the real estate when sold.

The opinion of the Court was delivered by

ROGERS, J.—The question depends on the construction of parts of the fourth and eleventh clauses of the will. In the fourth clause the testator declares:. "It is my mind and will, that my dear wife shall, during her natural life, have and enjoy the annual interest or income arising from the rents and sales of one equal third part of all my whole estate, lands, and tenements, whether the same consists of legal or equitable titles, after all necessary expenses, costs, charges, and advances, in recovering the same, and completing the *titles thereof, as well as [*168] of the selling and disposing of the same, shall first be deducted out of the whole amount of said rents and sales." And in the eleventh clause, he requests, that whatever moneys are due to him, "may be collected with all convenient dispatch, and that the same, with the amount of all his personal estate,

(Lewis's Estate.)

goods, chattels, and effects, not herein otherwise disposed of, may, after deducting thereout what may be necessary for the house-use of his wife, his daughter Margaret, and his grand-daughter Louisa, until a reasonable time shall be allowed for their convenient accommodation, and *also deducting thereout*, so much as may be necessary for discharging his just debts, and completing his titles to his Kentucky lands, be divided," &c. The difficulty is as to the fund out of which the payment of the expenses incurred in completing the title to the Kentucky lands should be paid. The widow contends, that they ought to be paid out of the personal estate; and the legatees, whilst they admit that the personal estate may be liable in the first instance, insist, that all the testator's real estate is the primary fund, and ultimately liable for these expenses. We are inclined to adopt the former construction. By the fourth clause the testator charges the whole real estate wherever situated, with all the necessary expenses, which for certain purposes might attend the same; and had it rested here, the widow would have been entitled to the income of the third part of the real estate during life only, after deducting in the first place, the moneys expended in completing the titles to those lands. But in the eleventh clause, for some reason which it is needless to conjecture, his mind would seem to have undergone a change. In that clause in terms which it is impossible to misunderstand, these specific expenses are ordered to be paid out of the personal fund, and the remainder of the personal estate is directed to be divided among certain legatees therein named. In that respect there is an inconsistency between the two clauses, which, if not impossible, it is difficult to reconcile. I feel a reluctance to adopt the views of the legatees, as it would create a partial intestacy; for it is only what may remain of the personal estate, after these deductions, that is bequeathed to the legatees. This certainly could not have been the intention of the testator. It is a rule of construction, that when a will contains two clauses totally inconsistent, and incapable of reconciliation, the latter shall have the preference. Subsequent words in a will, shall prevail over former inconsistent expressions; for the general rule is, that when there is a repugnancy, the first words in a deed, and the last words in the will shall prevail. And these reasons alone were the governing rules in *Sims* v. *Doughty*, (5 Ves. 243); *Doe* v. *Lester*, (2 Taunt. 109); and *Roe* v. *Reade*, (8 T. R. 122). In *Neville* v. *Broughton*, (1 Chan. R. 145,) the Court declared that, a general clause in a will ought not to prejudice a particular devise. And in *Heal* *v. *Green*, (1 Styles's Rep. 276,) the same principle is asserted. It is there said that generals in a will shall [*169] not revoke an express devise; the general must not destroy the

(Ex parte Morton.)

particular devise. These principles have a direct application and must govern the construction of this will. The testator charges all his real estate with the expenses incurred in relation to the same; but in the latter clause, although not in terms, yet in effect, he excepts the money expended in completing the titles to the Kentucky lands, and directs that these expenses shall be paid out of the personal estate.

But it is said that the personal estate has been more than exhausted in the payment of debts. If this be so, and the accounts exhibited would seem to support the allegation, there is an end of all difficulty; as it is too clear to admit of argument, that the real estate, is chargeable with the deficiency of the personal assets.

The following decree was made in this case—

" It is ordered and decreed, that the debts of the testator be paid from the personal estate, with the commissions and expenses allowed thereon; and that from the balance, if any, the charges for completing the testator's title to his Kentucky lands shall be defrayed."

Cited by Counsel, 6 Wharton, 76; 2 Jones, 197; 8 Harris, 244; 5 Casey, 235; 3 P. F. Smith, 107.
Cited by the Court, 10 P. F. Smith, 287.

[*170]          *[PHILADELPHIA, JANUARY 31, 1838.]